**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| ANGIE MARALEN GONZALES LOPEZ<br><br>Petitioner,<br><br>-against-<br><br>**DONALD J. TRUMP**, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; **PATRICIA HYDE**, IN HER OFFICIAL CAPACITY AS ACTING BOSTON FIELD OFFICE DIRECTOR, IMMIGRATION AND CUSTOMS ENFORCEMENT, ENFORCEMENT AND REMOVAL OPERATIONS; **DAVID W. JOHNSTON**; **VERMONT SUB-OFFICE DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT**, ENFORCEMENT AND REMOVAL OPERATIONS; **TODD M. LYONS**, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; **PETE R. FLORES**, IN HIS OFFICIAL CAPACITY AS ACTING COMMISSIONER FOR U.S. CUSTOMS AND BORDER PROTECTIONS; **KRISTI NOEM**, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; **MARCO RUBIO**, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE; **PAMELA BONDI**, IN HER OFFICIAL CAPACITY AS U.S. ATTORNEY GENERAL; AND **JONATHAN TUREK**, SUPERINTENDENT, CHITTENDEN REGIONAL CORRECTIONAL FACILITY.<br><br>Respondents. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

1. This Petition for a Writ of Habeas Corpus is respectfully submitted on behalf of Miss Angie Maralene Gonzales Lopez ("Miss Gonzales Lopez"), a twenty-four-year-old asylum seeker who has resided in the United States since in or around September of 2022. Miss Gonzales Lopez was born in raised in Lima, Peru – a home that she was

forced to flee in 2022 after experiencing persecution without the potential for redress from the Peruvian government.

2. The Department of Homeland Security ("the Department" or "DHS"), through the Board of Immigration Appeals ("the Board" or "BIA"), has abruptly and unlawfully reversed decades of settled immigration practice in order to deny immigration bond hearings to potentially millions of people in immigration proceedings nationwide, including here in Vermont.

3. The Board's recent decision in *Matter of Yajure Hurtado* posits a novel re-interpretation of the statutory framework of the Immigration and Nationality Act ("INA"), which unlawfully strips immigration courts of the jurisdictional authority to hear custody redetermination for detained noncitizens. As a result, any individualized review of a noncitizen's custody has become unobtainable for the vast and overwhelming majority of noncitizens in the United States.

4. This matter thus arises from the government's failure to articulate a clear or lawful basis for Miss Gonzalez Lopez's detention, sans any determination by either the Department or any court relative to her perceived danger to the community or potential flight risk. Miss Gonzalez Lopez's detention without a bond hearing is unlawful, a violation of bond regulations, and a violation of her due process rights under the Fifth Amendment to the U.S. Constitution.

## JURISDICTION

5. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

6. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Northwest State Correctional Facility in St. Albans, Vermont.

7. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

8. Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Any vindication of Miss Gonzalez Lopez's statutory, constitutional, or regulatory rights can and must come from this Court through habeas corpus.

9. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

10. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

11. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in the United States District Court for the District of Vermont, the judicial district in which Petitioner currently is detained.

12. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the District of Vermont.

## REQUIREMENTS OF 28 U.S.C. § 2243

13. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

14. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an

order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

15. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noi*a, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

16. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

17. Petitioner Angie Maralene Gonzalez Lopez is a Peruvian national, resident of Hartford Connecticut, and currently detained in Vermont. She is in the custody and under the direct control of Respondents and their agents.

18. Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of Homeland Security. Respondent Trump's address is the White House, 1600 Pennsylvania Ave. NW, Washington D.C. 20500.

19. Respondent Kristi Noem is named in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees U.S. Immigration and Customs Enforcement ("ICE") the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

20. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

21. Respondent Todd M. Lyons is named in his official capacity as the acting director of ICE. He administers and enforces the immigration laws of the United States, routinely conducts business in the District of Vermont, is legally responsible for pursuing efforts to remove Petitioner, and as such is the custodian of Petitioner. Respondent Lyon's address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington D.C. 20536-5900.

22. Respondent Pete R. Flores is named in his official capacity as the acting commissioner of Customs and Border Protection ("CBP"). In this capacity, Respondent Flores leads CBP employees who are responsible for the administration of immigration laws and the execution of detention and removal determinations within its area of authority. Respondent Flores' address is 1300 Pennsylvania Ave. NW, Washington D.C. 20229.

23. Respondent Patria Hyde is sued in her official capacity as the acting director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has the authority to release her.

24. Respondent David W. Johnston is named in his official capacity as the Director of the Vermont Sub-Office of the Boston Field Office for Immigration and Customs Enforcement within the United States Department of Homeland Security. In his capacity, he is responsible for the administration of immigration laws and the execution of

detention and removal determinations within the district of Vermont and is a custodian of Petitioner. Respondent Johnston's address is 64 Gricebrook Road, St. Albans, VT 05478.

25. Respondent Jonathan Turek is named in his official capacity as the acting Superintendent of Chittenden Regional Correctional Facility in South Burlington, Vermont, and is therefore the immediate custodian of Petitioner. Respondent Turek's address is 7 Ferrell St., South Burlington, VT 05403.

## STATEMENT OF FACTS

26. Petitioner fled Peru after experiencing violence and persecution. Petitioner entered the United States on or about September 2022 with the intent to seek asylum and has not left the United States since.

27. Petitioner was detained in Phoenix, Arizona when entering the United States, and later released to her family members. Petitioner has diligently attended all court appointments and ICE check-ins since her release.

28. Petitioner filed an I-589 Application for Asylum and Withholding of Removal on or about September 2025.

29. On or about August 2025, Petitioner was arrested for driving under the influence.

30. Petitioner attended her subsequent court date and was assigned a public defender with whom she was scheduled to speak at 12pm on the day that she was instead detained by ICE.

31. While attending a routine ICE check-in on or about October 30, 2025, Petitioner was detained and brought to Chittenden Regional Correctional Facility where she remains.

32. As of October 31, 2025, Petitioner remains in booking due to overcrowding.

33. Petitioner entered the U.S. around September 2022. On information and belief, the Department of Homeland Security ("DHS") has alleged that Petitioner was not previously admitted or paroled into the United States.

34. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(1), including because Petitioner does not meet the criteria for Expedited Removal. *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

35. Petitioner cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, Petitioner is not currently "seeking admission" to the United States. *See Aguiriano Romero v. Hyde*, __ F.3d __, No. 25-11631, 2025 WL 2403827, at *1, 8-13 (D. Mass. Aug. 19, 2025) (Murphy, J.).

36. On information and belief, Petitioner was not, at the time of arrest, paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), and therefore Petitioner could not "be returned" under that provision to mandatory custody under 8 U.S.C. § 1225(b) or any other form of custody. Petitioner is not subject to mandatory detention under § 1225 for this reason as well.

37. Instead, as a person arrested inside the United States and held in civil immigration detention, Petitioner is subject to detention, if at all, pursuant to 8 U.S.C. § 1226. *See Aguiriano*, 2025 WL 2403827, at *1, 8-13 (collecting cases).

38. Petitioner is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because they have not been convicted of any crime that triggers such detention. *See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

39. Accordingly, Petitioner is subject to detention, if at all, under 8 U.S.C. § 1226(a).

40. As a person detained under 8 U.S.C. § 1226(a), Petitioner must, upon their request, receive a custody redetermination hearing (colloquially called a "bond hearing") with strong procedural protections. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment); 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

41. Petitioner requests release or, in the alternative, a bond hearing under 1226(a).

## LEGAL FRAMEWORK

42. Based on this allegation that Petitioner entered the U.S. without being inspected and admitted, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

43. Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This decision purports to require the Immigration Court to unlawfully deny a bond hearing to all persons such as Petitioner.[1]

44. The responsible administrative agency has therefore predetermined that Petitioner will be denied a bond hearing.

45. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who

previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

46. Petitioner is being irreparably harmed by their ongoing unlawful detention without a bond hearing. *See Aguiriano*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'").

47. The Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised by Petitioner, and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute).

48. There is no statutory requirement for Petitioner to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not require by statute in this context.").

49. Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required,

administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Fifth Amendment Right to Due Process--Unlawful Punishment; Freedom from Cruel Treatment and Conditions of Confinement

50. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

51. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

52. This fundamental principle of our free society is enshrined in the Fifth Amendment's Due Process Clause, which specifically forbids the Government to "deprive[] any person ... of ... liberty ... without due process of law." U.S. Const. Amend. V.

53. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). The Fifth Amendment to the U.S. Constitution establishes due process protections for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker,* 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas,* 533 U.S. at 693 (internal quotations omitted).

54. "[Noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 212 (1953).

55. The Fifth Amendment guarantees that civil detainees, including all immigrant detainees, may not be subjected to punishment. The government violates this substantive due

process right when it subjects civil detainees to treatment and conditions of confinement that amount to punishment or does not ensure the detainees' safety and health.

56. Respondents have violated Petitioner's Fifth Amendment substantive due process rights by subjecting them to conditions of confinement that amount to punishment.

## COUNT TWO
### Violation of 8 U.S.C. 1226(a) and Associated Regulations

57. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

58. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

59. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

60. Petitioner has not been provided with a bond hearing as required by law.

## COUNT THREE
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

61. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

62. Because Petitioner is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that Petitioner receives a bond hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

63. Petitioner has not been provided with a bond hearing as required by law and would be unlikely to obtain the relief that she seeks through the administrative process due to the Board's recent decision in *Matter of Yajure Hurtado*.

64. Petitioner's continuing detention sans opportunity for individualized review is unlawful and violative of Petitioner's constitutionally protected rights.

## COUNT FOUR
### Violation of Fifth Amendment Right to Due Process

**(Failure to Provide an Individualized Hearing for Domestic Civil Detention)**

65. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

66. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

67. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V.

68. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

69. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

70. The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged

with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

71. Petitioner was arrested inside the United States and are being held without being provided any individualized detention hearing.

72. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## COUNT FIVE
### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

73. Petitioner incorporates the preceding paragraphs as if fully set forth herein.

74. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

75. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Vermont;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(4) Declare that Petitioner's detention is unlawful.

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on conditions this Court deems just and proper, or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 USC § 1226(a) within seven days;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(7) Grant any further relief this Court deems just and proper.

Respectfully Submitted,

Dated: November 1, 2025

                /s/ Nathan Virag
                Nathan Virag, Esq.
                Associations of Africans Living in Vermont
                20 Allen St., FL 3
                Burlington, VT 05401
                802-373-8055
                Virag.Nathan@gmail.com
                Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Angie Maralene Gonzalez Lopez, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 1st day of November, 2025.

                                                /s/ Nathan Virag
                                                Nathan Virag, Esq.