UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 NOV 17 PM 12: 56

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| ANGIE MARALENE GONZALES LOPEZ, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 2:25-cv-863 ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, DAVID W. JOHNSTON, in his official capacity as Vermont Sub-Office Director of Immigration and Customs Enforcement, Enforcement and Removal Operations, TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, PETE R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection, KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security, MARCO RUBIO, in his official capacity as Secretary of State, PAMELA BONDI, in her official capacity as U.S. Attorney General, JONATHAN TUREK, in his official capacity as Superintendent, Chittenden Regional Correctional Facility, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Respondents. | ) |

**ORDER ON PETITION FOR HABEAS CORPUS**
**(Doc. 1)**

Petitioner Angie Maralene Gonzales Lopez brings this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking her release from immigration detention. (Doc. 1.) Respondents ("the Government") are various government officials whom Ms. Gonzales Lopez

identifies as her legal custodians. Ms. Gonzales Lopez has been detained at Chittenden Regional Correctional Facility in South Burlington, Vermont since October 30, 2025, when she was arrested by Immigration and Customs Enforcement ("ICE") officials at a routine ICE check-in. (*Id.* ¶ 31.)[1] She asserts that she is detained under the Government's discretionary detention authority, located at 8 U.S.C. § 1226(a), and is therefore entitled to a bond hearing before an immigration judge. The Government responds that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is neither statutorily nor constitutionally entitled to a bond hearing. (Doc. 11.) Petitioner has filed a reply (Doc. 12), and the parties have now completed their briefing on the merits of the petition.

## Factual Background

Ms. Gonzales Lopez is a 24-year-old Peruvian national who entered the United States on or about September 29, 2022, without inspection or admission. (Doc. 1 ¶¶ 17, 26, 33; *see also* Doc. 11-1 ¶ 7.) United States immigration officials detained her in Phoenix, Arizona shortly after she entered the country. (Doc. 1 ¶ 27; Doc. 11-1 ¶ 8.) The Notice to Appear in connection with that detention advised that she was taken into custody under 8 U.S.C. § 1226. (Doc. 11-1 ¶ 8.) On or about October 13, 2022, ICE released Ms. Gonzales Lopez to her family members on a $3,000 bond. (Doc. 1 ¶ 27; Doc. 11-1 ¶ 10.) After her release, she attended all required ICE check-ins and immigration court hearings. (Doc. 1 ¶ 27.)

In August 2025, Ms. Gonzales Lopez was arrested in Connecticut for driving under the influence. (*Id.* ¶ 29; *see also* Doc. 11-1 ¶ 11.) She was assigned a public defender. (Doc. 1

---

[1] The Petition includes an allegation that Ms. Gonzales Lopez is detained at the Northwest State Correctional Facility in St. Albans, Vermont. (Doc. 1 ¶ 6.) Whether she was detained at that facility for some period of time is not relevant to the issues here.

¶ 30.)  Then, in September 2025, Ms. Gonzales Lopez filed an I-589 Application for Asylum and Withholding of Removal.  (*Id.* ¶ 28.)

On October 30, before her first meeting with her public defender, Ms. Gonzales Lopez attended an ICE check-in and was detained by ICE.  (*Id.* ¶¶ 30–31; *see also* Doc. 11-1 ¶ 12.)  ICE transported her to Chittenden Regional Correctional Facility, where she remains detained.  (Doc. 1 ¶ 31; *see also* Doc. 11-1 ¶ 14.)

## Procedural History

The court granted a Temporary Restraining Order (TRO) in this case on November 1, 2025, ordering that Ms. Gonzales Lopez not be removed from the United States or moved out of the territory of the District of Vermont until further court order.  (Doc. 3.)  The court heard argument on November 4, 2025, and extended the TRO to allow the parties time to provide briefing.  (*See* Doc. 8.)  The parties have now completed briefing and the court rules here on the merits of the habeas petition.

## Analysis

Ms. Gonzales Lopez seeks a writ of habeas corpus and an order for either her immediate release or a bond hearing under 8 U.S.C. § 1226(a) within seven days.  She raises several arguments in favor of her petition, namely that her detention violates her substantive and procedural due process rights under the Fifth Amendment of the U.S. Constitution and that it violates 8 U.S.C. § 1226(a)'s guarantee of a bond hearing.  (*See* Doc. 1.)  Because the court concludes that her statutory claim entitles her to the relief that she seeks, the court does not consider Ms. Gonzales Lopez's constitutional arguments.

I.      **Ms. Gonzales Lopez is Detained Under 8 U.S.C. § 1226(a)**

The Immigration and Nationality Act ("INA") provides for the detention of certain noncitizens during the pendency of their immigration proceedings. For noncitizens who do not have an order of removal, detention is governed by 8 U.S.C. §§ 1225(b), 1226(a), or 1226(c). Generally, § 1225(b) applies to "arriving" noncitizens or "applicants for admission" who are "seeking admission." *See* 8 U.S.C.§ 1225(b)(1)(A)(i), (b)(2)(A). Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) is a catchall provision that governs the detention of any other noncitizen apprehended by immigration enforcement and has long been understood to apply to noncitizens "already present in the United States," i.e., no longer at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but §§ 1225(b) and 1226(c) call for mandatory detention. *Id.* at 302, 305–06.

The central dispute in this case is whether Ms. Gonzales Lopez is subject to § 1226(a)'s discretionary detention regime or § 1225(b)(2)'s mandatory one. That question has its origins in a Department of Homeland Security ("DHS") interim guidance and subsequent memorandum issued in July 2025, which advanced a new interpretation of § 1225(b)(2) that would dramatically expand its scope. *See Rodriguez v. Bostock*, --- F. Supp. 3d ----, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) (discussing interim guidance dated July 8, 2025); *see also* U.S. Customs & Border Prot., *Detention of Applicants for Admission* (July 10, 2025) ("Effective immediately, it is the position of DHS that applicants for admission are subject to mandatory detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from DHS custody except by INA § 212(d)(5) parole."), https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf [https://perma.cc/TXD6-8LY5]. The Board of

Immigration Appeals ("BIA") adopted the same interpretation in a precedential decision on September 5, 2025. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

Since then, dozens of district courts across the country have addressed the proper interpretation of § 1225(b)(2), almost all of them rejecting DHS's and the BIA's new interpretation. *See, e.g., J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); *Lopez Benitez v. Francis*, --- F. Supp. 3d ----, 2025 WL 2371588 (S.D.N.Y. 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Doe v. Moniz*, --- F. Supp. 3d ----, 2025 WL 2576819 (D. Mass. 2025); *Leal-Hernandez v. Noem*, No. 25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, Civil Action No. 25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Rodriguez*, --- F. Supp. 3d ----, 2025 WL 2782499; *J.U. v. Maldonado*, 25-CV-4836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Mata Velasquez v. Kurzdorfer*, No. 25-cv-493, 2025 WL 1953796 (W.D.N.Y. July 16, 2025); *Lepe v. Andrews*, No. 25-cv-1163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025).[2] This court now enters that conversation and reaches the same conclusion.

As with other courts addressing this issue, the court begins with the statutory text. Section 1226 provides that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). The statute then goes on to provide that the Secretary of Homeland Security can release the

---

[2] Although the Government concedes that "some" courts have rejected the new interpretation of § 1225(b)(2), (*see* Doc. 11 at 9 n.2), it is more accurate to describe the courts that have reached this conclusion as the vast majority. Indeed, the cases addressing this issue are too numerous to cite here. The court has selected a handful of cases as examples. The Government has cited a small number of cases suggesting a contrary conclusion. (*See* Doc. 11 at 9–10.) As stated in other decisions, those cases appear to be outliers. *See, e.g., Alvarez Ortiz v. Freden*, No. 25-CV-960, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025) (joining "the majority of courts" holding that § 1225(b)(2) "does not apply to individuals . . . who are physically in the country but have not been legally admitted and seek to stay").

5

noncitizen on bond or conditional parole. *Id.* § 1226(a)(2). Further, a noncitizen detained under § 1226(a) may appeal the "initial custody determination," including the setting of bond, to an immigration judge. 8 C.F.R. § 1236.1(d)(1). The Supreme Court has referred to § 1226(a) as a "default rule" providing broad detention authority. *Jennings*, 583 U.S. at 288.

By contrast, § 1225(b)(2) requires the detention of a noncitizen "who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) defines an applicant for admission as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1). Thus, "for section 1225(b)(2)(a) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Lopez Benitez*, --- F. Supp. 3d. ----, 2025 WL 2371588, at *5 (quoting *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. 2025)); *see also J.G.O.*, 2025 WL 3040142, at *2–3 (accounting for all of the text in § 1225(b)(2) reveals three requirements).

Ms. Gonzales Lopez is indisputably an "applicant for admission" as defined by § 1225(a)(1) because she is present in the United States, but she has never been admitted by an immigration officer. The court therefore considers whether she is also "seeking admission." The Government argues that she is "seeking admission" principally because, as an "applicant for admission," she "is simply engaged in one way of 'seeking admission.'" (Doc. 11 at 11.)

The Government's argument is, essentially, that all "applicants for admission" are necessarily "seeking admission." Indeed, the ordinary language of these phrases might cause one to wonder how an "applicant for admission" might not be "seeking admission." But, as

6

noted in *J.G.O.*, "[t]his oddity is explained by the statutory definition of the phrase 'applicant for admission.'" *J.G.O.*, 2025 WL 3040142, at *3. Under the statutory definition, no "application" is required; "[a]ll that's needed is presence without admission." *Id.* Thus, the phrase "seeking admission" can (and does) mean something more. There are multiple reasons for this conclusion.

### A.     Textual Analysis

Courts interpreting the phrase "seeking admission" have determined that this phrase refers to "some active desire or process toward admission." *Id.* As the court in *J.G.O.* explained, the INA defines "admission" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Entry, "which is undefined, can be given its 'ordinary, contemporary, common meaning.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *Id.* (quoting "Entry," *Oxford English Dictionary* (2d ed. 1989); then quoting "Enter," *Oxford English Dictionary* (2d ed. 1989)). Finally, the use of the present-progressive "seeking," indicates "some sort of present-tense action." *Lopez Benitez*, --- F. Supp. 3d. ----, 2025 WL 2371588, at *6 (internal citation and quotation marks omitted). Taken together, the phrase "seeking admission" refers to the present attempt to lawfully "go in" to the United States. Someone like Ms. Gonzales Lopez who has already entered the United States and resided here for more than three years cannot reasonably be said to be both an "applicant for admission" (which she is) as well as a person still "seeking admission." (which she is not).[3]

---

[3] This conclusion defeats the Government's contention that, as an asylum applicant, Ms. Gonzales Lopez must be "seeking admission." (Doc. 11 at 2, 12.) Her application for asylum is

7

Reading § 1225(b)(2) as the Government suggests would also "render the phrase 'seeking admission' in § 1225(b)(2)(A) mere surplusage." *Lopez Benitez*, --- F. Supp. 3d. ----, 2025 WL 2371588, at *6. "Because 'courts must give effect, if possible, to every clause and word of a statute,' that phrase must take on some meaning that wouldn't make it 'superfluous,' considering the separate term 'applicant for admission.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)). Thus, if the phrase *can* be read to mean something different, it should be. As just explained above, "seeking admission" not only can be read to mean something different than "applicant for admission" but is most naturally read to mean something different.

B.   **Statutory Scheme**

Turning to the statutory scheme, reading § 1225(b)(2) as the Government suggests would also nullify an amendment to 8 U.S.C. § 1226(c) that was codified less than a year ago. *See* Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025). That amendment mandates detention for anyone who (1) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements" of any one of several crimes; and (2) "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a)" of Title 8. 8 U.S.C § 1226(c)(1)(E). In turn, 8 U.S.C. § 1182(6)(A) renders inadmissible any noncitizen who is "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(6)(A)(i). The Government argues in this litigation that any noncitizen who entered the United States without admission or parole is already subject to

---

distinct from the question of "entry," or initial passage into the United States. *Cf. J.G.O.*, 2025 WL 3040142, at *1 (petitioner, who had applied for asylum, was not "seeking admission").

8

mandatory detention under § 1225(b)(2). If that were true, amending § 1225(c) to mandate their detention when they have *additionally* violated certain criminal legal requirements would be entirely superfluous. *See Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025) ("[T]his application [of § 1225(b)(2)] would render superfluous the mandatory detention provisions found in § 1226(c)(1)(A), (D), and (E) . . . ."); *Sampiao v. Hyde*, No. 25-cv-11981, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (same).

C.  **Legislative History and Intent**

The legislative history of § 1226 further supports Ms. Gonzales Lopez's position. As the court in *Rodriguez* recounts, "the predecessor statute to section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States" and, like § 1226(a), provided for discretionary release on bond. *Rodriguez*, --- F. Supp. 3d ---, 2025 WL 2782499, at *23 (citing 8 U.S.C. § 1252(a)(1) (1994)). When Congress passed the Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), "Congress declared that the new section 1226(a) 'restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond [a noncitizen] who is not lawfully in the United States.'" *Id.* (quoting H.R. Rep. No. 104-469, pt. 1, at 229; citing H.R. Rep. No. 104-828, at 210)). "Because noncitizens arrested while unlawfully residing in the United States were entitled to discretionary detention under section 1226(a)'s predecessor statute, and Congress declared its scope unchanged by IIRIRA, this background supports the position that [Ms. Gonzales Lopez] too [is] subject to discretionary detention." *Id.*

It is also important to recognize the landscape shift that the Government's interpretation would have on the scope of immigration detention. As other courts have noted, the Government's "reading and application of § 1225(b)(2) would subject nearly all noncitizens

9

already in the United States but not previously admitted or entered illegally to § 1225(b)'s mandatory detention," *Artiga*, 2025 WL 2829434, at *7, "potentially subjecting millions more undocumented immigrants to mandatory detention," *Lopez Benitez*, --- F. Supp. 3d ----, 2025 WL 2371588, at *8. At the same time, that expansive reading of § 1225(b)(2) would render § 1226(a) exceedingly narrow in scope, applying only to people who entered the United States legally but who are now subject to removal. Yet "there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach." *Id.* Presumably, if Congress had wanted to subject millions of people to mandatory detention, it would have said so more clearly. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 127 (2016) (holding that courts should generally presume that Congress does not "hide elephants in mouse holes").

### D. Longstanding Agency Practice

The court next considers the weight that should be given to the executive branch's interpretation of § 1225(b)(2) over time. As the Supreme Court recently explained in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–13 (2024), the court need not give deference to either the executive branch's current interpretation or its prior interpretation. However, agency "interpretations [of statutes] issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* at 394. In this case, the plain meaning of the phrase "seeking admission" aligns with the interpretation adopted in § 1225(b)(2)'s implementing regulations, "which were promulgated mere months after passage of the statute and have remained consistent over time." *Lopez Benitez*, --- F. Supp. 3d. ----, 2025 WL 2371588, at *7; *see also Rodriguez*, --- F. Supp. 3d ----, 2025 WL 2782499, at *24 ("In this case, for decades since the passage of [the IIRIRA], the

government . . . generally agreed that noncitizens arrested while living in the United States were detained under section 1226(a).").

Specifically, 8 C.F.R. § 235.2(c)(1) provides that "any arriving [noncitizen] who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the [INA] shall be detained in accordance with section 235(b) of the [INA] [8 U.S.C. § 1225(b)]." 8 C.F.R. § 235.2(c)(1). In turn, 8 C.F.R. § 1.2 defines "arriving [noncitizen]" as "an applicant for admission coming or attempting to come into the United States." 8 C.F.R. § 1.2. Thus, until quite recently, DHS applied 1225(b)(2)'s mandatory detention regime only to noncitizens who were actively "coming or attempting to come" into the U.S.—i.e., those who were "seeking admission." *See Rodriguez*, --- F. Supp. 3d ----, 2025 WL 2782499, at *25 ("As other district courts considering which detention provision applies to noncitizens residing in the United States have noted, the regulations 'mirror[] the text of section 1225(b)(2)(A), which applies where an individual is an "applicant" who is also *doing* something: "seeking admission."'" (alteration in original; quoting *Martinez*, --- F. Supp. 3d ----, 2025 WL 2084238, at *6)). Until September, the Board of Immigration Appeals ("BIA") also took the position that § 1225(b)(2) did not apply to noncitizens residing in the United States. *See id.* at *26 (discussing three unpublished BIA decisions holding that the detention of a noncitizen arrested within the United States is governed under section 1226(a), not 1225(b)(2)). That consistent, longstanding position of the executive branch weighs in favor of Ms. Gonzales Lopez's interpretation of § 1225(b)(2).

E.     **Ms. Gonzales Lopez's Prior Treatment Under § 1226(a)**

As in several other cases addressing this issue, the Government's records show that Ms. Gonzales Lopez was originally detained under § 1226(a) when she entered the United States in

11

2022. (*See* Doc. 11-1 ¶ 8.) She was released from that detention on bond—as called for in § 1226(a)—not on parole. (*See id.* ¶ 10.) The Government represents that her bond was then revoked in October 2025, and she was re-detained. (*Id.* ¶ 12.) Section 1226(b) specifically provides that DHS "may revoke a bond or parole authorized under subsection (a), rearrest the [noncitizen] *under the original warrant*, and detain the [noncitizen]." 8 U.S.C § 1226(b) (emphasis added). Ms. Gonzales Lopez's original warrant was under § 1226(a), so, by the terms of § 1226(b), her more recent arrest should have been governed by § 1226(a) as well.

Although Ms. Gonzales Lopez's prior classification under § 1226(a) is not dispositive, it highlights that, under the Government's prior interpretation of § 1225(b)(2), she did not fall within the confines of the mandatory detention statute—she was not an "arriving noncitizen." Thus, the legitimacy of her current detention under § 1225(b)(2) rests entirely on whether the Government's new interpretation of that statute is correct. The court has already determined that it is not. Ms. Gonzales Lopez is therefore detained under § 1226(a).

## II.   Ms. Gonzales Lopez's Prior Bond Hearing does not Negate her Present Right to a Bond Hearing

At oral argument, the Government argued that, even if Ms. Gonzales Lopez is detained under § 1226(a), she is not entitled to a bond hearing because she already received one when she was first detained in 2022. The Government's understanding of Ms. Gonzales Lopez's rights would defeat the purpose of providing for judicial review of custody determinations by immigration judges, as set out in 8 C.F.R. § 1236.1(d). Any time a noncitizen was released on bond or parole by an immigration judge, DHS officials could circumvent the immigration judge's order by revoking bond or parole without a hearing (as in this case) and re-detaining the noncitizen, who would then have no right to a detention redetermination hearing to test the legitimacy of the bond revocation. The court cannot accept such an interpretation of 8 C.F.R.

12

§ 1236.1(d). Furthermore, the Government's reading would defy the regulatory text, which states that a noncitizen may request a bond re-determination hearing "*at any time* before an order [in removal proceedings] becomes final." 8 C.F.R. § 1236.1(d) (emphasis added). The court therefore rejects the Government's suggestion that Ms. Gonzales Lopez is not entitled to a bond hearing to assess whether the Government was justified in revoking her bond.

### III.   Relief

In her prayer for relief, Ms. Gonzales Lopez seeks an order providing for her immediate release on conditions deemed appropriate by the court. (Doc. 1 at 14.) In the alternative, she requests that the court order that she receive a bond hearing before an immigration judge within seven days. (*Id.*) The injury in this case is that Ms. Gonzales Lopez has not been provided an opportunity to have a bond hearing in immigration court, as required by § 1226(a). The appropriate relief is therefore to provide her with such a hearing. At that hearing, the immigration judge must follow this court's determination that Ms. Gonzales Lopez is detained under § 1226(a).

Ms. Gonzales Lopez also requests reasonable attorney's fees under 28 U.S.C. § 2412. Section 2412(d)(1)(A) provides that, if a party prevails against the United States,

> a court shall award . . . fees and other expenses . . . incurred by that party in any civil action . . ., including proceedings for judicial review of agency action . . ., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

To receive attorney's fees, the prevailing party must submit a fee application to the court within 30 days of final judgment in the action that states the amount sought, provides an itemized statement of its costs, demonstrates that the party is a prevailing party, and alleges that the position of the United States was not substantially justified. 28 U.S.C. § 2412(d)(1)(B).

Consistent with 28 U.S.C. § 2412(d)(1)(B), Ms. Gonzales Lopez has 30 days to submit a fee application connected to this case.

## Conclusion

Ms. Gonzales Lopez's Petition (Doc. 1) is GRANTED as follows. The court DECLARES that Ms. Gonzales Lopez is detained under 8 U.S.C. § 1226(a) and that her continued detention without a bond hearing before an immigration judge is unlawful. The court therefore ORDERS that Defendants provide her with such a hearing, in accordance with this opinion, within seven days. The court further ORDERS that, until the bond hearing is completed and ruled upon, Ms. Gonzales Lopez not be removed from the United States or moved out of the territory of the District of Vermont.

Dated at Burlington, in the District of Vermont, this 17th day of November, 2025.

Geoffrey W. Crawford, Judge
United States District Court